924 P.2d 226

STATE of Idaho, Plaintiff–Respondent,

v.

Douglas Doyle ROBERTS, Defendant–Appellant.

No. 20659.

Court of Appeals of Idaho.

Nov. 15, 1995.

Rehearing Denied Dec. 28, 1995.

After the jury rendered a guilty verdict, Roberts moved for a new trial based in part upon alleged error in the court's ruling that deterred use of the alibi evidence. This motion was denied. Roberts appeals from the denial of his motion for a new trial. We conclude that the court erred in holding that the State would be entitled to respond to Roberts' alibi testimony by introducing evidence of his prior incarceration, but because we are persuaded that this error did not affect the verdict, we affirm the order denying a new trial. The sentences imposed by the district court are also affirmed.

## I.

### FACTS AND COURSE OF PROCEEDINGS

Fuller & Williams, Twin Falls, for appellant. Greg J. Fuller, argued.

Larry EchoHawk, Attorney General; L. LaMont Anderson, Deputy Attorney General, argued, Boise, for respondent.

LANSING, Judge.

Douglas Doyle Roberts was found guilty by a jury of lewd and lascivious conduct with, and sexual abuse of, his granddaughter, S.H. At the trial, the State presented the testimony of three other girls who said that Roberts had also molested them. By this appeal we are asked to determine the propriety of an evidentiary ruling by the district court that dissuaded Roberts from presenting alibi evidence which, he contends, would have impeached the three girls' testimony about prior uncharged molestations. The district court ruled that if Roberts presented alibi testimony to show that he was out of state at the time of the alleged uncharged misconduct, the State would be permitted to elicit evidence that Roberts spent this out-of-state time incarcerated in Nevada for a prior offense. Because of this ruling, Roberts elected to forego presenting the alibi evidence.

Roberts was charged with lewd and lascivious conduct with a minor under sixteen, I.C. § 18–1508, and sexual abuse of a child under sixteen, I.C. § 18–1506. Both charges stemmed from his molestation of S.H. when she was nine or ten years old. Just prior to trial, Roberts filed a motion in limine to exclude the State's proffered evidence of alleged previous sexual abuse committed by Roberts against four other young girls. Each of these girls was prepared to relate experiences of sexual abuse by Roberts similar to that which he was charged with committing against S.H. The district court granted Roberts' motion as to only one of the four witnesses, and the State was allowed to present the testimony of the remaining three girls, who will be referred to herein for convenience as the "corroborating witnesses".[1]

Following the district court's determination that the corroborating witnesses' testimony would be admitted, Roberts advised the court that he wanted to impeach their testimony by having his wife testify that Roberts was out of state from late 1988 through December 1990. This evidence, Roberts contended, would show that he was

---

1. In *State v. Moore,* 120 Idaho 743, 819 P.2d 1143 (1991), the Idaho Supreme Court held that in a trial for a sex offense against a seven-year-old girl, evidence of similar offenses against similar victims was admissible to show a general plan to exploit and sexually abuse an identifiable group of young girls and to corroborate the vic-

tim's testimony. *See also State v. Phillips,* 123 Idaho 178, 845 P.2d 1211 (1993) and *State v. Tolman,* 121 Idaho 899, 828 P.2d 1304 (1992). Roberts does not dispute that the corroborating witnesses' testimony was admissible for such purposes.

not even in the same state with the corroborating witnesses when the sexual abuse of these witnesses allegedly occurred. Roberts asserted that his alibi as to these uncharged acts was "airtight" because he was in a Nevada prison during this time period. Although Roberts wished to present his wife's testimony that he was not living in Idaho at the time of the alleged uncharged molestations, he understandably did not want the jury to learn of his prior imprisonment. Therefore, Roberts filed a second motion in limine seeking to preclude the State from presenting evidence that Roberts had been incarcerated at the time in question.

On this second motion in limine, the district court held that if Roberts presented the testimony that he was out of state from late 1988 through December 1990, the State would be permitted to elicit the fact that he was "in jail" during that time, though it could not divulge the nature of the crime for which Roberts was incarcerated.[2] As a consequence of this ruling, and in order to prevent disclosure of his past incarceration, Roberts elected to forego presenting his alibi evidence.

Following a guilty verdict, Roberts filed a motion for a new trial. As grounds for a new trial, Roberts argued that he received ineffective assistance of counsel at his trial and that the court erred in its holding that Roberts' incarceration in Nevada could be disclosed to the jury if he presented the alibi evidence. In ruling on the motion for a new trial, the district court acknowledged that it may have been mistaken in holding that Roberts' use of his alibi to impeach the corroborating witnesses would entitle the State to disclose his incarceration in Nevada. Nonetheless, the court found that a new trial was not warranted because, even if Roberts' alibi evidence had been presented without any reference to his past incarceration, the jury verdict would have been the same. Roberts' claim that he was entitled to a new trial on the ground of ineffective assistance of counsel was also rejected.

The district court sentenced Roberts to serve a unified life sentence with a ten-year minimum term of confinement for the lewd and lascivious conduct conviction and a concurrent determinate term of five years' imprisonment for the sexual abuse conviction. Roberts subsequently filed a motion under I.C.R. 35 for reduction of the sentences, which was denied.

On appeal, Roberts challenges the denial of his motion for a new trial, his sentences, and the denial of his Rule 35 motion.

## II.

## ANALYSIS

### A. Motion for a New Trial Based on Ineffective Assistance of Counsel

Roberts' claim that he was entitled to a new trial due to ineffective assistance of counsel at the initial trial does not detain us long, for this claim does not state a permissible basis for a new trial. The grounds upon which a new trial may be granted to a criminal defendant are set forth in I.C. § 19–2406,[3] and ineffective assistance of trial coun-

---

2. Roberts had been convicted in Nevada for voluntary manslaughter.

3. Idaho Code Section 19–2406 provides:

When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only:
   1. When the trial has been had in his absence, if the indictment is for a felony.
   2. When the jury has received any evidence out of court other than that resulting from a view of the premises.
   3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented.

   4. When the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of all the jurors.
   5. When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial.
   6. When the verdict is contrary to law or evidence.
   7. When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly-discovered evidence, the defendant must produce at the hearing in support thereof the affidavits of the witnesses by whom such evidence is expected to be given, and if time is

sel is not one of the delineated grounds. A new trial may not be ordered for a reason other than those specified in Section 19–2406. *State v. Lankford,* 116 Idaho 860, 873, 781 P.2d 197, 210 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990). Consequently, an allegation of ineffective assistance of counsel does not state a basis for a new trial. *State v. Gomez,* 126 Idaho 83, 86–87, 878 P.2d 782, 785–86 (1994), *cert. denied,* 513 U.S. 1005, 115 S.Ct. 522, 130 L.Ed.2d 427 (1994). Such claims may appropriately be presented through an application for post-conviction relief. *Id.; State v. Mitchell,* 124 Idaho 374, 375–76, 859 P.2d 972, 973–74 (Ct.App.1993). It follows that the trial court did not abuse its discretion in denying this aspect of Roberts' motion for a new trial.

## B. Motion for a New Trial Based on Evidentiary Ruling.

■ Roberts next asserts that he is entitled to a new trial because the district court erred in holding that evidence of Roberts' incarceration in Nevada could be presented by the State if Roberts introduced his alibi evidence. One of the grounds for a new trial specified in I.C. § 19–2406 is an error by the court "in the decision of any question of law arising during the course of the trial." I.C. § 19–2406(5). Roberts' contention that the trial court committed error in its evidentiary ruling asserts an error in deciding a question of law and therefore states a basis for a new trial cognizable under I.C. § 19–2406.

■ Where one of the statutory grounds is demonstrated, the court may grant a defendant's motion for a new trial "if required in the interest of justice." I.C.R. 34; *Lankford,* 116 Idaho at 873, 781 P.2d at 210. Whether to grant or deny a new trial is a discretionary matter for the trial court. *State v. Dambrell,* 120 Idaho 532, 543, 817 P.2d 646, 657 (1991); *State v. Scroggins,* 110 Idaho 380, 384, 716 P.2d 1152, 1156 (1986),

*cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986). Because Roberts has framed his appeal as an appeal from the denial of his motion for a new trial rather than as a direct challenge to the court's ruling on his motion in limine, we must employ the standard of review applicable to decisions on new trial motions. The action of the trial court in granting or denying a motion for a new trial will be reviewed for an abuse of discretion. *State v. Powers,* 100 Idaho 290, 596 P.2d 802 (1979). The trial court will not be found to have abused its discretion unless a new trial was granted for a reason that is not delineated in the code or unless the decision to grant or deny a new trial was manifestly contrary to the interests of justice. *State v. Davis,* 127 Idaho 62, 65, 896 P.2d 970, 973 (1995); *Lankford,* 116 Idaho at 873, 781 P.2d at 210.

■ Since Roberts' predicate for a new trial is a claimed error in the district court's evidentiary ruling, our review must begin with an examination of that ruling to determine if it was incorrect. If we find error in the district court's decision to permit disclosure of Roberts' incarceration in Nevada if Roberts introduced his alibi evidence, we must then consider whether, in view of that error, the denial of a new trial was manifestly contrary to the interests of justice.

In ruling on Roberts' motion in limine, the district court concluded that it would be unfair to allow Roberts to elicit the alibi testimony from his wife without allowing the State on cross-examination to establish that Roberts' absence from Idaho during the subject two-year period was due to his incarceration. Roberts argues that the evidence of his imprisonment had no relevance for purposes of proving the State's case against him and, to the extent that it had any relevance, the evidence should have been excluded under I.R.E. 403[4] because its probative value was substantially outweighed by the unfair

---

required by the defendant to procure such affidavits the court may postpone the hearing of the motion for such length of time as, under all the circumstances of the case, may seem reasonable.

**4.** Idaho Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

prejudicial impact of informing the jury that Roberts had a prior conviction. Roberts complains that the court's erroneous ruling placed him on the horns of an impermissible dilemma: he was forced to choose between (1) using his alibi evidence, with the prejudicial consequence that the jury would learn of the prior conviction, or (2) foregoing the alibi evidence, thereby relinquishing an effective impeachment of the corroborating witnesses' allegations of uncharged sexual molestations.

We agree with Roberts that the trial court's ruling on this evidentiary issue was incorrect. The fact that Roberts was imprisoned in Nevada during the subject two-year interval was not relevant to prove any element of the State's case against Roberts. Evidence is "relevant" if it has "any tendency to make the existence of any fact of consequence to determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Evidence regarding Roberts' incarceration in Nevada would not have made more probable any fact that the State sought to prove against Roberts. It clearly would not have undermined Roberts' alibi, but, to the contrary, strengthened it. Thus, no prejudice would have befallen the State from the jury's remaining uninformed of the reason for Roberts' absence from the State of Idaho. The evidence of Roberts' past imprisonment would have benefitted the State only to the extent that the jury might have inferred therefrom that Roberts was a person of poor character or one with criminal propensities, and therefore was more likely to have committed the offenses charged in the present case. Admission of evidence for such a purpose, however, is prohibited by I.R.E. 404.[5] Accordingly, the district court committed an error of law when it denied Roberts' motion to exclude evidence of his imprisonment in Nevada, and Roberts should have been per-

mitted to present his alibi evidence without the attendant consequence that his past incarceration would be revealed to the jury.

■ Having found this error in the trial court's evidentiary ruling, we must next consider whether the trial court was correct in holding that the error did not necessitate a new trial in the interest of justice. Roberts argues that, had he been allowed to present his "airtight" alibi, the jury would have disbelieved the corroborating witnesses' testimony regarding uncharged acts of sexual abuse, that this effective impeachment of the corroborating witnesses would have led the jury to question the veracity of S.H., and that an acquittal probably would have resulted. The district court, on the other hand, concluded that any error in its evidentiary ruling which deterred Roberts from using his alibi evidence "cannot be said to have probably changed the outcome of the trial."

Roberts' claim that a new trial is necessary because the defendant was effectively precluded from presenting probative evidence by an erroneous trial court ruling is analogous to a request for a new trial based upon newly discovered evidence. In both situations the motion is predicated upon the defendant's inability to present at trial probative evidence favorable to the defense. Therefore, we think it appropriate in evaluating Roberts' claim to apply standards similar to those used where the motion is posited upon newly discovered evidence. In the latter context, a four-part test has been articulated to define when the new evidence will justify a retrial. The movant must show:

(1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching;

---

5. Idaho Rule of Evidence 404 provides in pertinent part:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

　(1) Character of accused. Evidence of a pertinent trait of the accused's character of-

fered by an accused, or by the prosecution to rebut the same.

　·　　·　　·　　·　　·

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(3) that it will probably produce an acquittal; and (4) that the failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

*State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976). *See also State v. Pugsley*, 119 Idaho 62, 63, 803 P.2d 563, 564 (Ct.App. 1991); *State v. Ames*, 112 Idaho 144, 146, 730 P.2d 1064, 1066 (Ct.App.1986). The first and fourth elements of this test are inapplicable where, as here, the evidence was available but was not presented due to trial court error. The second and third elements are, however, properly applied in the present circumstance.

Whether element number two is satisfied by Roberts' proffered alibi evidence is subject to debate. The evidence would have been material and not cumulative. Arguably, however, it was useful only for impeachment purposes. Impeachment evidence is that which is offered to attack the credibility of a witness rather than to establish the existence or non-existence of a disputed fact. *Pugsley*, 119 Idaho at 63, 803 P.2d at 564. The alibi testimony might be viewed as only impeachment because its purpose was to discredit the State's witnesses on collateral issues not bearing directly upon the commission of the charged offenses. On the other hand, the State offered the corroborating witnesses' testimony to prove that uncharged molestations occurred, and Roberts' alibi evidence is intended to disprove those molestations. The alibi evidence therefore is arguably offered to establish the nonexistence of a disputed fact and is not purely for impeachment. For purposes of this analysis, we will resolve this debate in Roberts' favor and will assume that the second element articulated in *Drapeau, supra*, is satisfied.

Nonetheless, we conclude that justification for a new trial has not been demonstrated because Roberts' alibi evidence does not withstand scrutiny under the third element— that the evidence would probably produce an acquittal. Although Roberts contends that all three witnesses who testified to collateral incidents of sexual abuse would have been impeached by his alibi evidence, close examination of their testimony shows that there

was potential for impeachment of only one of the witnesses. Just one of the corroborating witnesses indicated that the alleged abuse occurred during the period between late 1988 and December 1990, when Roberts was in prison. Of the two remaining witnesses, one stated that the abuse occurred more than three years prior to the February 1993 trial, but she could not otherwise narrow the time frame. Thus, the molestation to which she testified could have occurred long before Roberts' imprisonment, and her testimony would not have effectively been impeached by his alibi. Roberts' alibi would have been equally ineffective to discredit the third girl, for she was never able to make any estimate as to when the abuse occurred. Thus, Roberts' evidence that he was out of state from late 1988 through 1990, if presented, would not have been the definitive impeachment tool he portrays and would not have undermined the credibility of two of the three corroborating witnesses. It must also be borne in mind that the testimony of S.H., the victim in this case, would not have been discredited in any respect by the alibi testimony. In light of these limitations on the value of Roberts' unpresented alibi testimony, and considering the totality of the evidence in the case, we agree with the district court's assessment that presentation of the alibi evidence would not have changed the jury's verdict. Accordingly, we conclude that the trial court's denial of Roberts' motion for a new trial was not manifestly contrary to the interests of justice and not an abuse of discretion.

## III.

## SENTENCING

■ The district court imposed a unified life sentence with a minimum term of ten years' confinement for the lewd and lascivious conduct conviction and a determinate sentence of five years for the sexual abuse conviction. On appeal, Roberts contends that his sentencing was tainted by his inability to make use of the alibi evidence at trial. At the sentencing hearing, the district judge expressed his view that Roberts presented a

danger to society. Roberts argues that this conclusion was based in part upon the claims of the three corroborating witnesses, which he was prevented from impeaching at trial. Roberts asserts that, "it is impossible to ascertain how the court *may* have exercised its discretion in sentencing had the witnesses' testimony been discredited at trial by the real but unusable alibi. . . ."

We find this argument fallacious. First, as noted above, the so-called alibi did not come close to carrying the impeachment force attributed to it by Roberts, for it would have, at most, contradicted only one of the three corroborating witnesses. More importantly, the alibi information, although unknown to the jury at trial, was not unknown to the sentencing judge. That evidence was not excluded at sentencing, and the defendant's attorney did, in fact, argue at the sentencing hearing that the three corroborating witnesses' testimony was not worthy of belief in light of Roberts' period of incarceration in Nevada. Thus, the erroneous evidentiary ruling that dissuaded Roberts from presenting his alibi evidence at trial had no effect whatsoever at the sentencing hearing.

▆▆▆ Roberts is also incorrect in asserting that the district court should not have considered the testimony of the corroborating witnesses when fashioning Roberts' sentences. A sentencing judge may properly consider a wide range of information in determining the appropriate sentence for a defendant. This includes consideration of the defendant's past criminal history and, with due caution, consideration of the defendant's alleged criminal activity for which no charges have been filed. *State v. Coffin,* 104 Idaho 543, 548, 661 P.2d 328, 333 (1983); *State v. Ott,* 102 Idaho 169, 627 P.2d 798 (1981); *State v. Barnes,* 121 Idaho 409, 411, 825 P.2d 506, 508 (Ct.App. 1992); *State v. Paz,* 112 Idaho 407, 732 P.2d 376 (Ct.App.1987). The district court was entitled to consider the evidence of uncharged molestations of children other than S.H., and the credence to be attached to that evidence, in fashioning Roberts' sentences.

▆▆▆ Next, Roberts contends that his sentences were excessive. When a sentence is challenged on appeal, we must review it for abuse of the sentencing court's discretion. Where a sentence is not illegal, it will be disturbed on appeal only if it is unreasonably harsh in view of the sentencing objectives of protecting society, deterrence, rehabilitation and retribution. *State v. Broadhead,* 120 Idaho 141, 146, 814 P.2d 401, 406 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). In order to establish that the sentence was an abuse of the trial court's discretion, the defendant must show that the sentence was excessive under any reasonable view of the facts. *Broadhead,* 120 Idaho at 145, 814 P.2d at 405. We base our appellate review on the probable length of confinement. For sentences imposed under the Unified Sentencing Act, I.C. § 19–2513, the probable length of confinement is the minimum period of incarceration imposed by the sentencing judge. *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). Thus, we must determine whether the minimum sentence of ten years for lewd and lascivious conduct with a minor under sixteen and the five-year term for sexual abuse of a minor under sixteen were unreasonable in Roberts' case.

After hearing the evidence and argument presented at sentencing, the district court concluded that the minimum terms imposed were necessary because there is an undue risk that Roberts will commit other, similar offenses and because lesser sentences would depreciate the seriousness of the crimes. Having thoroughly reviewed the record, we find no fault in the district court's perception. Roberts has not demonstrated that the sentences are excessive under any reasonable view of the facts.

Finally, Roberts argues that the district court erred in denying his motion for reduction of the sentences pursuant to I.C.R. 35. The State responds that due to the trial court's delay in ruling upon Roberts' request for Rule 35 relief until some eighteen months after the motion was filed, the court lost jurisdiction to grant the motion, regardless of its merits. We need not pass upon this jurisdictional question, however, because

Roberts has made no argument in support of his Rule 35 motion other than those we have already considered and rejected above in reviewing his sentences and the sentencing proceedings.

### IV.

### CONCLUSION

The district court's decision denying Roberts' motion for a new trial is affirmed, as are the sentences imposed.

WALTERS, C.J., and PERRY, J., concur.